**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

REGINA WALLACE; JERLINE
WASHINGTON; H.O.P.E., INC., d/b/a
HOPE FAIR HOUSING CENTER, an Illinois
Not-for-Profit Corporation; and RAMP CENTER
FOR INDEPENDENT LIVING;

      Plaintiffs;

      v.

UNIVERSITY VILLAGE MANAGEMENT
COMPANY; UNIVERSITY VILLAGE,
A LIMITED PARTNERSHIP; UNIVERSITY
VILLAGE III, A LIMITED PARTNERSHIP;
DCC UNIVERSITY VILLAGE LLC;
JDC UNIVERSITY VILLAGE LLC;
JDM UNIVERSITY VILLAGE LLC;
DONNA C. CHUDACOFF; JEFFREY D.
CRANE; JON D. MICKELSON;
KIM JESTER; TRACY LINDGREN; LINDA
SMITH; and JANICE DECKER;

      Defendants.

Jury Trial Demanded

**COMPLAINT**

Plaintiffs, by and through their attorneys, Soule, Bradtke & Lambert, file their complaint against Defendants as follows:

**Nature of the Action**

1.      This is a case in which Defendants engaged in a pattern and practice of discrimination against their tenants and applicants for tenancy with disabilities, including Regina Wallace and Jerline Washington, and when Plaintiffs Regina Wallace and Jerline Washington objected to this discrimination and attempted to address it, Defendants promptly retaliated against them.

1

2.      Plaintiffs seek declaratory and permanent injunctive relief requiring Defendants to end their discriminatory practices and to reform their contracts, policies, and procedures to conform to legal mandates and abolish discriminatory treatment in the conditions of residency, as well as monetary damages (actual and punitive), costs, and reasonable attorneys' fees and expenses.

3.      This action is brought pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. 3601 *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

### Jurisdiction and Venue

1.      This Court has jurisdiction over the subject matter of this case pursuant to 42 U.S.C. § 3613 and 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 because the Plaintiffs and the Defendants reside within the District and Eastern Division and the events or omissions giving rise to the claims occurred in the District.

### Parties

**I.      Plaintiffs**

3.      Plaintiff Regina Wallace is a citizen of the United States who now resides in Sycamore, DeKalb County, Illinois.  At the time of her application for housing with Defendants, Ms. Wallace resided in Cook County, Illinois.

4.      Ms. Wallace is a person with a handicap as defined by 42 U.S.C. §§ 3602(h)(1)-(3) and a person with a disability as defined by 42 U.S.C. § 12102 in that she has a physical impairment which substantially limits one or more of her major life activities, she has a record of such an impairment, and Defendants regarded her as having such an impairment.

2

5.      Ms. Wallace is substantially limited in her ability to engage in several major life activities, including standing, walking, and prolonged sitting.

6.      Ms. Wallace requires an assistive device to walk.  She uses either a cane or a wheelchair.  Due to her disability, she is at risk for falling when walking.

7.      Ms. Wallace filed a complaint with the Chicago Office of the United States Department of Housing and Urban Development ("HUD") Office of Fair Housing and Equal Opportunity ("FHEO") on October 23, 2012 arising out of Defendants' conduct.  HUD referred the complaint for investigation to the Illinois Department of Human Rights ("IDHR") pursuant to an intergovernmental work share agreement on or about December 13, 2012 (while retaining jurisdiction to investigate and address Section 504 allegations).[1]  Ms. Wallace's complaint with IDHR remained pending until Ms. Wallace withdrew it on June 17, 2013 to pursue this litigation.

8.      Plaintiff Jerline Washington is a citizen of the United States who now resides in Sycamore, DeKalb County, Illinois.

9.      Ms. Washington has a minor son of approximately two years of age during the time period in question, for whom she has sole custody.

10.      Ms. Washington filed a complaint with the Chicago HUD FHEO on October 26, 2012 arising out of Defendants' conduct.  HUD referred the complaint to IDHR on or about December 13, 2012 (while retaining jurisdiction to investigate and address Section 504 allegations).  Ms. Washington's complaint with IDHR remained pending until Ms. Washington withdrew it on June 17, 2013 to pursue this litigation.

11.      Plaintiff H.O.P.E., Inc., doing business as HOPE Fair Housing Center ("HOPE"), is a private, non-profit corporation incorporated under the laws of Illinois with its principal place

---

[1] The Chicago HUD FHEO investigation of Defendants' conduct and federal program compliance remains pending as of the filing of this case.

of business located at 245 W. Roosevelt Road, Building 15, Suite 107, in West Chicago, DuPage County, Illinois.

13. HOPE's mission includes advocating for the rights of people with disabilities to accessible housing. HOPE works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, investigation of fair housing violations, and enforcement. One of HOPE's goals is the promotion of accessible housing.

13. HOPE filed a complaint concerning discrimination by Defendants against plaintiffs Wallace and Washington with the Chicago HUD FHEO office on October 26, 2012. HUD referred the complaint to IDHR on or about December 13, 2012 (while retaining jurisdiction to investigate and address Section 504 allegations). HOPE's complaint with IDHR remained pending until HOPE withdrew it on June 17, 2013 to pursue this litigation.

14. Plaintiff RAMP Center for Independent Living ("RAMP") is a non-profit organization with its principal place of business located at 202 Market Street in Rockford, Winnebago County, Illinois. RAMP also has an office in DeKalb, Illinois.

15. RAMP assists people with disabilities to control and direct their own lives and empowers them to realize there are no limits to what they can do. RAMP's mission promotes an accessible society that allows and expects full participation by people with disabilities. RAMP seeks to accomplish its mission by assisting individuals to live independently, make changes in their own lives, seek peer support, obtain resources and remove barriers that threaten their ability to live independently. RAMP advocates the implementation of current laws, promotion of needed legislation and improvement of existing systems for persons with disabilities while working to diminish negative attitudes that threaten to impede equal access.

4

16.     RAMP filed a complaint with the Chicago HUD FHEO office arising out of

Defendants' conduct as alleged herein on October 26, 2012.  HUD referred the complaint to

IDHR on or about December 13, 2013 (while retaining jurisdiction to investigate Section 504

allegations).  RAMP's complaint with IDHR remained pending until RAMP withdrew it on June

17, 2013 to pursue this litigation.

**II.     Defendants**

<u>Owner Defendants</u>

17.     Defendant University Village, a Limited Partnership ("University Village") is an

Illinois for-profit limited partnership, licensed and doing business within Illinois.  University

Village has a principal office at 479 N. Main Street, Suite 200 in Glen Ellyn, DuPage County,

Illinois.  University Village's registered agent, Jay Gilbert, is located in Glen Ellyn, DuPage

County, Illinois.

18.     University Village owns UV Phase I and UV Phase II.

19.     Defendant University Village III, A Limited Partnership ("University Village III")

is an Illinois for-profit limited partnership, licensed and doing business within Illinois.

University Village III has a principal office at 479 N. Main Street, Suite 200 in Glen Ellyn,

DuPage County, Illinois.  University Village III's registered agent, Jay Gilbert, is located in Glen

Ellyn, DuPage County, Illinois.

20.     University Village III owns UV Phase III.

21.     Defendant DCC University Village LLC ("DCC") is an Illinois limited liability

company, licensed and doing business within Illinois.  DCC has a principal office at 343

Wainwright Drive in Northbrook, Cook County, Illinois.  DCC's manager, Defendant Donna C.

Chudacoff, is located in Glencoe, Cook County, Illinois.  DCC's registered agent, Jay Gilbert, is

located in Glen Ellyn, DuPage County, Illinois.

22.     DCC is a principal and general partner of Defendant University Village and University Village III, a Limited Partnership.

23.     Defendant JDC University Village LLC ("JDC") is an Illinois limited liability company, licensed and doing business within Illinois.  Defendant JDC has a principal office at 343 Wainright Drive in Northbrook, Cook County, Illinois.  JDC's manager, Defendant Jeffrey D. Crane, is located in Northbrook, Cook County, Illinois.  JDC's registered agent, Jay Gilbert, is located in Glen Ellyn, DuPage County, Illinois.

24.     JDC is a principal and general partner of Defendant University Village and University Village III, a Limited Partnership.

25.     Defendant JDM University Village LLC ("JDM") is an Illinois limited liability company, licensed and doing business within Illinois.  JDM has a principal office at 333 W. North Avenue, #415 in Chicago, Cook County, Illinois.  JDM's manager, Defendant Jon D. Mickelson, is located in Chicago, Cook County, Illinois.  JDM's registered agent, Jay Gilbert, is located in Glen Ellyn, DuPage County, Illinois.

26.     JDM is a principal and general partner of Defendant University Village and University Village III, a Limited Partnership.

27.     Each LLC that is a principal and partner in the University Village and University Village III partnerships (which own all phases of University Villages) is principally managed by an individual Defendant (Defendants Chudacoff, Crane and Mickelson) who also holds an Officer position in the joint University Village Management Company.

28.     On information and belief, Defendants Chudacoff, Crane and Mickelson have ownership interests in Defendant University Village Management Company.

<u>Management Entity Defendant</u>

29.     Defendant University Village Management Company ("UVMC") is an Illinois for-profit corporation, licensed and doing business within Illinois, with its principal place of business in DeKalb, DeKalb County, Illinois.  UVMC's registered agent, Jay Gilbert, is located in Glen Ellyn, DuPage County, Illinois.   UVMC's president, Defendant Donna C. Chudacoff, is located in Glencoe, Cook County, Illinois.  UVMC's secretary, Jon Mickelson, is located in Chicago, Cook County, Illinois.

30.     UVMC is in the business of managing and operating multifamily residential properties that are covered by the FHA and the ADA, including, but not limited to:

> a.   University Village Phase I, located at 722 Annie Glidden Road in DeKalb, DeKalb County, Illinois ("UV Phase I");
>
> b.   University Village Phase II apartment complex, located at 706 N. Annie Glidden Road in DeKalb, DeKalb County, Illinois ("UV Phase II"); and
>
> c.   University Village III, located at 819 Russell Road, in DeKalb, DeKalb County, Illinois ("UV Phase III").

31.     UVMC jointly, commonly and uniformly manages all phases of University Village, applying the same policies and procedures to each/all.

<u>Individual Defendants</u>

32.     Defendant Donna C. Chudacoff is a United States citizen who resides in Glencoe, Cook County, Illinois.  She is the manager of Defendant DCC and the President of Defendant UVMC.

33.     Defendant Jeffrey D. Crane is a United States citizen who resides in Northbrook, Cook County, Illinois.  He is the manager of Defendant JDC and an officer of Defendant

UVMC.

34.     Defendant Jon D. Mickelson is a United States citizen who resides in Chicago, Cook County, Illinois.  He is the manager of Defendant JDM and the Secretary of Defendant UVMC.

35.     Defendant Kim Jester is a United States citizen who resides in DeKalb, DeKalb County, Illinois.  He is employed by Defendant UVMC as a property manager of the UV Phase II.

36.     Defendant Tracy Lindgren is a United States citizen who resides in Sycamore, DeKalb County, Illinois.  She is employed by Defendant UVMC as an assistant property manager of UV Phase II.

37.     Defendant Linda Smith is a United States citizen who resides in DeKalb, DeKalb County, Illinois.  She is an employee and agent of Defendant UVMC, on information and belief as a Leasing Specialist.

38.     Defendant Janice Decker is a United States citizen who resides in DeKalb, DeKalb County, Illinois.  She is an employee and agent of Defendant UVMC, on information and belief as a Leasing Specialist.

## Factual Allegations

### I.     Background

39.     Under HUD's Section 8 Project-Based Rental Assistance Program, HUD can enter into Section 8 project-based housing assistance payment (HAP) contracts with owners of multifamily rental housing who agree to provide such housing to extremely low-, very low-, or low-income families.

40.     Through this program, pursuant to HUD regulations and the HAP contracts, HUD

makes project-based housing assistance payments directly to the housing owners to make up the difference between what an extremely low-, very low-, or low-income household can afford and the approved rent for an adequate housing unit in a multifamily project.

41.     Extremely low- and very low-income families whose incomes do not exceed 50 percent of the median income for the area are eligible to occupy the assisted units.  A limited number of available units may be rented to low-income families whose incomes are between 50 percent and 80 percent of median income for the area.  Eligible tenants must pay the highest of 30 percent of adjusted income, 10 percent of gross income, the portion of welfare assistance designated for housing, or the minimum rent established by HUD.

42.     At all times relevant to this Complaint, University Village received federal financial assistance in the form of Section 8 project-based Housing Assistance Payments ("HAP") pursuant to HAP contracts between University Village and the United States Department of Housing and Urban Development ("HUD") for UV Phase I and UV Phase II. Likewise, University Village III, a Limited Partnership, received federal financial assistance in the form of Section 8 project-based Housing Assistance Payments pursuant to HAP contracts between University Village III, a Limited Partnership, and HUD for UV Phase III.

43.     At all times relevant, the owner Defendants engaged in common unified management policies and practices through and amongst Defendant UVMC and its principals and employees.

44.     Defendants jointly engaged in a pattern of discriminatory conduct and programmatic violations as alleged herein towards the individual Plaintiffs and other similarly situated individuals.

45.     During the time period in question, the owner and management Defendants

maintained a joint website and jointly receive or received online and paper applications for all University Village phases.  Applicants apply to University Village in general, not by "phase."

46.     At all times relevant, the individual Defendants knew of, acquiesced in and furthered the owner and management Defendants' policies and practices towards the individual Plaintiffs and persons similarly situated to them.

47.     At all times relevant to this Complaint, Plaintiff Regina Wallace was eligible to occupy an assisted unit.

## II.     Disability Discrimination, Including Failure to Make Reasonable Accommodations, and Familial Status Discrimination

48.     In approximately June or July of 2011, Ms. Wallace submitted an application for an assisted unit on University Village's website.  In the application, Ms. Wallace requested a handicap-accessible first-floor unit and noted that she required the use of an assistive walking device and that she could not climb stairs.

49.     Shortly after submitting the online application, Ms. Wallace received a letter from Defendant Janice Decker, requesting that Ms. Wallace come to Defendant UVMC's management office located on Crane Drive in University Village to meet regarding an apartment.   Ms. Decker's letter also requested that Ms. Wallace bring to the meeting various documentation to prove that she qualified for an assisted unit.

50.     Ms. Washington spoke to Ms. Decker after Ms. Wallace received the letter.  Ms. Decker falsely assured Ms. Washington that Ms. Wallace would be receiving an accessible first-floor unit.

51.     Ms. Wallace met with Ms. Decker at UVMC's management office in UV Phase II on Crane Drive in or around September of 2011.  Also present were Ms. Wallace's daughter, Plaintiff Jerline Washington, and Ms. Washington's baby.  Defendant Linda Smith was present

for part of the meeting. Defendant Tracy Lindgren was present to introduce herself to the individual plaintiffs. Ms. Wallace walked with the assistance of a cane that day.

52. UVMC's management office was not handicap-accessible. There was no ramp to provide access to the office for individuals with mobility issues.

53. At the meeting with Ms. Decker, Ms. Wallace again informed Defendants that she had a disability that affected her mobility and impaired her ability to walk and climb stairs. She requested a first-floor apartment that was handicap-accessible, as advertised by Defendants and as promised by Ms. Decker.

54. Ms. Decker again falsely assured Ms. Wallace that she would receive a first-floor apartment.

55. At this meeting, Ms. Wallace informed Defendants that she received her social security disability payments on the second Wednesday of each month. She therefore requested that Defendants accommodate her disability by accepting her rent payments shortly after the second Wednesday of every month. She also submitted paperwork indicating that she received social security disability payments on the second Wednesday of each month.

56. Ms. Decker refused, stating that rent was due on the first of every month, and that late fees would be assessed if rent was not received by the fifth of the month. This refusal was based on UVMC and the owner Defendants' joint policy.

57. As a result of Defendants' representations to Ms. Wallace, she relinquished her first-floor apartment located in Cook County, Illinois.

58. On October 13, 2011, her move-in date, Ms. Wallace met with Ms. Decker and Ms. Smith again in Ms. Decker's office. Also present were three of Ms. Wallace's adult children—Plaintiff Washington, Charlene Bush, and Tiffany Jones. Ms. Wallace signed a lease

11

for 843 Crane Drive #308, an apartment in UV Phase II.

59.     Ms. Decker assigned a UVMC employee to show Ms. Wallace her apartment.

60.     When Ms. Wallace was led to her apartment, she discovered that it was a one-bedroom apartment on the third floor of a building that did not have an elevator.

61.     Ms. Wallace and her children returned to Ms. Decker's office.  Ms. Wallace and her children again informed Ms. Decker that Ms. Wallace could not climb up and down stairs.  Ms. Wallace also informed Ms. Decker that she had already given up her previous apartment so she did not have anywhere else to go.

62.     Ms. Decker responded that the third floor apartment was the only one available, but that they would try to move Ms. Wallace to the first floor within three months.

63.     Since she had already given up her previous apartment, Ms. Wallace had no choice but to accept the third-floor apartment.

64.     Shortly after moving in to the third-floor unit, on October 15, 2011, Ms. Wallace fell in her apartment and hit her head.  She was unable to get up on her own.  She was found on the floor by her daughter, Ms. Washington.

65.     Ms. Washington met with Ms. Decker, Ms. Smith, and Ms. Lindgren, and told them that Ms. Wallace required a live-in aide because she was at risk for falling, and that Ms. Washington would be taking on the role.  Ms. Washington informed them that she and her minor son would be living with Ms. Wallace until they moved Ms. Wallace to a first-floor unit.

66.     Beginning in November 2011 and continuing throughout the duration of Ms. Wallace's tenancy in UV Phase II, Ms. Washington and her minor child occupied the apartment to allow Ms. Washington to provide care and assist Ms. Wallace with daily life activities, with the consent and knowledge of Defendants.

67.     Ms. Washington submitted her mother's rental check each month, following receipt of Ms. Wallace's SSDI check, to the leasing office in-person.  Delivery of rent was required by Defendants, though the office was not accessible to residents with disabilities.

68.     In early November 2011, the first month Ms. Wallace's rent was due, Defendants taped to Ms. Wallace's door (but did not properly serve) a five-day notice, stating that that her rent was overdue and that she would be assessed late fees until it was paid.

69.     Ms. Wallace called Defendant UVMC's management office.  She spoke with Ms. Smith.  She again informed Defendants that she received her disability payments on the second Wednesday of the month, and requested that Defendants accommodate her disability by allowing her to pay her rent after receiving her disability payment.  Ms. Smith refused.

70.     Ms. Wallace then requested that a UVMC employee pick up her rent check due to her difficultly climbing up and down stairs.  Ms. Smith refused.

71.     Ms. Wallace also requested that Defendants install a ramp so she could access the management office to drop off her check.  Ms. Smith refused.

72.     Ms. Washington met with Ms. Decker to follow up on the five-day notice, and reiterated Ms. Wallace's request that Defendants allow Ms. Wallace to pay her rent on or after the second Wednesday of the month.  Ms. Smith and Ms. Lindgren were also present.  Ms. Decker refused.

73.     All requests for reasonable accommodation and complaints made to Defendants as described herein constitute protected conduct under the Fair Housing Act and Section 504. All adverse actions following such requests and complaints, as described herein, constitute retaliation by Defendants as well as unlawful discrimination.

74.     Ms. Decker then asked if Ms. Washington was staying in Ms. Wallace's unit.  Ms.

Washington responded that she and her son were. Ms. Decker stated that Ms. Wallace was violating her lease by having additional residents. Ms. Washington stated that Ms. Wallace required live-in care until she was moved to the first floor.

75.     Defendants stated that Ms. Wallace would need to provide a letter from a doctor stating that Ms. Wallace required a live-in aide.

76.     Ms. Washington provided a letter from Ms. Wallace's physician to Ms. Decker, Ms. Smith, and Ms. Lindgren in UVMC's management office on or around November 14, 2011. The letter stated that Ms. Wallace's disability caused her to fall frequently and that her ability to perform activities of daily living was limited. The letter stated that Ms. Wallace needed someone to stay with her to help with activities of daily living and in case of falls.

77.     Defendants claimed the letter was insufficient because it did not specifically include the term "24-hour supervision". They rejected the letter.

78.     Approximately a week later, Ms. Washington obtained a second letter from Ms. Wallace's physician and again presented it to Ms. Decker, Ms. Smith, and Ms. Lindgren in UVMC's management office. The physician's second letter stated that Ms. Wallace's disability led to frequent falls and limited ability to perform activities of daily living, and that she therefore needed "twenty-four hour" supervision.

79.     Defendants then accepted the letter, but Defendants continued to inform Ms. Washington that she could not be the live-in aide because she had a son.

80.     On a continuing and ongoing basis, Defendants discriminatorily and retaliatorily failed and refused to relocate Ms. Wallace to a first floor or accessible unit.

81.     Defendants asked if somebody else could watch Ms. Washington's son. She said no. Since she was providing 24-hour care, she would need her son to live in the apartment as

well.

82.     Defendants had knowledge on a continuing basis that Ms. Washington continued to serve as Ms. Wallace's live-in aide.

83.     Defendants informed Ms. Washington that to obtain a two-bedroom unit, someone else would have to sign the lease, but they would not allow Ms. Washington to do so because of her baby.   Live-in aides are not required under HUD regulations to sign leases.

84.     Ultimately, at Defendants' suggestion, Ms. Wallace's son, Curtis Benson, signed Ms. Wallace's lease, even though Defendants were aware that Ms. Washington and her son would be living in the unit, and Mr. Benson would not be.

85.     In any event, Defendants never provided a two-bedroom unit to accommodate a live-in aide for Ms. Wallace.

86.     In approximately January 2012, Ms. Wallace fell while climbing down the three flights of stairs in her apartment building.  Ms. Washington caught Ms. Wallace to break her fall, but Ms. Washington was injured in the process.

87.     Ms. Washington again met with Defendant UVMC's management to request a first-floor unit for Ms. Wallace.  Defendants again denied the request.

88.     In March 2012, Defendants falsely informed Ms. Wallace that they would be transferring her to an accessible first floor unit and advised her to pack up her things and keep it to a bare minimum, which she did.

89.     In or around April 2012, on the occasion of meeting with Defendant Smith concerning obtaining a temporary parking sticker for Plaintiff Washington, Ms. Wallace and Ms. Washington inquired as to when Ms. Wallace would be moved and expressed concern because they were living out of packed boxes in her original unit, per the direction of Defendants.

During this meeting, Defendant Jester questioned Ms. Smith as to why Ms. Wallace was not just moved already and admitted that the matter would have been largely resolved if Defendants had just moved Ms. Wallace.

90.     When Ms. Wallace had not been transferred to an accessible first-floor unit by June 2012, she inquired again with Defendants as to the status of her transfer request. Ms. Wallace was informed that it could take another year before she was transferred into an accessible first-floor unit.

91.     Altogether, on approximately eight or nine occasions, Ms. Wallace spoke to management-level employees of Defendant UVMC, including Ms. Smith, requesting that they accommodate her disability by allowing her to move into a first-floor apartment to reduce the number of stairs she had to climb. Defendants refused.

92.     On at least four occasions, first-floor units in Ms. Wallace's building similar to the unit she occupied became vacant. None of these units were offered to Ms. Wallace.

93.     Ms. Wallace requested on a monthly basis that Defendants accommodate her disability by allowing her to pay her rent after she received her disability payments on the second Wednesday of the month. Defendants repeatedly refused.

94.     Throughout the duration of her tenancy at UV Phase II, Defendants taped five-day eviction notices on Ms. Wallace's door (without properly serving them) and assessed late fees against Ms. Wallace every month for every day that she failed to pay rent after the fifth day of each month. Ms. Wallace thus suffered continued harassment and threats of eviction and paid unjustified additional monthly fees for her apartment, based on discrimination and retaliation.

95.     Ms. Decker, Ms. Smith, and Ms. Lindgren all observed Ms. Wallace using a cane or other assistive walking device on numerous occasions.

16

96.     Throughout the entire time Ms. Wallace occupied a unit in UV Phase II, Ms.

Washington frequently requested in person in Defendant UVMC's management offices the

reasonable accommodations of a first-floor accessible unit, a two-bedroom unit to accommodate

Ms. Wallace's live-in aide, and a modified rent due date to accommodate Ms. Wallace's

disability payments.  Defendants repeatedly refused her requests.

### III.     Continued Discrimination and Retaliation

97.     In July 2012, Ms. Wallace fell outside her building (843 Crane Drive) due to UV

Phase II's lack of accessibility for individuals with disabilities.

98.     Ms. Wallace and Ms. Washington again contacted UVMC's management and

requested that she be moved to a first floor unit.  Defendants again failed to accommodate Ms.

Wallace.

99.     In July of 2012, Ms. Wallace contacted Plaintiff RAMP for assistance in

obtaining accessible housing.

100.     RAMP contacted and met with Defendant Kim Jester on August 15, 2012 to

attempt to convince Defendants to accommodate Ms. Wallace's disability.  At that meeting,

Respondent Jester informed RAMP that there were no "permanent accessible" units at the

UVMC's properties, but that Defendants had ramps which could be placed to back up to an

apartment door; however, he believed these ramps were in storage somewhere.

101.     Defendants continued to refrain from accommodating Ms. Wallace's disability in

any way.

102.     Defendants also ignored RAMP's attempts to follow up with them regarding

accommodating Ms. Wallace's disability.

103.     Since Defendants were unwilling to provide Ms. Wallace with accessible housing,

she applied with the Housing Authority of DeKalb to obtain accessible housing in a different apartment complex.

104. The Housing Authority's application process required Ms. Wallace's current landlords, Defendants, to provide a reference before the Housing Authority could assist Ms. Wallace in obtaining accessible housing.

105. In response to the Housing Authority's request for a referral, Defendants provided false and negative information.

106. Defendants' negative referral resulted in the Housing Authority's denial of Ms. Wallace's application on September 24, 2012.

107. In addition, after Ms. Wallace contacted RAMP, Defendants began to threaten her.

108. In a phone conversation Ms. Wallace had with Ms. Smith, Ms. Smith told Ms. Wallace that Defendants have cameras and they can see everything Ms. Wallace is doing.

109. HOPE then undertook advocacy on Ms. Wallace's behalf, asking in a letter on October 5, 2012 that the DeKalb County Housing Authority to reconsider Ms. Wallace's eligibility for housing assistance without considering unlawful factors such as Defendants' conduct.

110. RAMP continued to monitor the matter in conjunction with HOPE.

111. On October 11, 2012, Defendants taped to Ms. Wallace's door a lease violation Notice signed by Ms. Lindgren, stating, "[W]e have reason to believe that you have not reported the names of all individuals who live in your unit.  If you do not contact us to discuss this matter within 10 days of receiving this notice, your lease permits us to terminate your tenancy."  This Notice was sent despite the fact that Ms. Wallace and Ms. Washington had repeatedly told

Defendants that Ms. Washington and her son were living in Ms. Wallace's apartment until she received a first-floor unit.

112.    This Notice was discriminatory and retaliatory.

113.    HOPE continued to investigate the matter, including conducting an on-site visit of the subject property on October 19, 2012, including the management office, sidewalks, common elements and parking lots.

114.    HOPE continued to communicate with the DeKalb County Housing Authority in order to rectify the retaliatory denial of housing there to Ms. Wallace directly resulting from Defendants' conduct.   Ultimately, Ms. Wallace was provided housing assistance by the Housing Authority in December of 2012, and moved into an accessible two bedroom unit in Sycamore in January 2013.

115.    Ms. Wallace, with the assistance of HOPE and RAMP, filed a complaint with the Chicago HUD FHEO on October 23, 2012 arising out of Defendants' conduct.

116.    Ms. Washington, with the assistance of HOPE and RAMP, filed a complaint with the Chicago HUD FHEO on October 26, 2012 arising out of Defendants' conduct.

117.    HOPE filed a complaint with the Chicago HUD FHEO on October 26, 2012 arising out of Defendants' conduct.

118.    RAMP filed a complaint with the Chicago HUD FHEO on October 26, 2012 arising out of Defendants' conduct.

**Damages**

119.    Plaintiffs Regina Wallace and Jerline Washington have suffered loss of their civil rights, emotional injury, humiliation, and embarrassment as a result of the discriminatory and retaliatory conduct of Defendants.

120. Plaintiff HOPE has been directly and substantially injured as a result of the above discriminatory and retaliatory acts of Defendants in that:

    a.  HOPE has been frustrated in its mission to eradicate discrimination in housing and in carrying out the programs and services it provides, including advocating for the rights of people with disabilities to accessible housing, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices; and

    b.  HOPE's limited resources have been diverted from providing these services to efforts directed to investigate, address, and counteract Defendants' discriminatory and retaliatory conduct.

121. Plaintiff RAMP has been directly and substantially injured as a result of the above discriminatory and retaliatory acts of Defendants in that:

    a.  RAMP has been frustrated in its mission to promote an accessible society that allows and expects full participation by people with disabilities and in carrying out the programs and services it provides, including assisting individuals to live independently, advocating for the rights of people with disabilities to accessible housing, educating the public about fair housing rights and requirements, promoting needed legislation and the improvement of existing systems for persons with disabilities, providing assistance to individuals and families looking for housing or affected by discriminatory

housing practices, and eliminating discriminatory housing practices; and

b. RAMP's limited resources have been diverted from providing these services
to efforts directed to investigate, address, and counteract Defendants'
discriminatory and retaliatory conduct.

122.   The discriminatory and retaliatory actions of Defendants were willful, malicious,
and taken with reckless disregard for Plaintiffs' rights.

**COUNT I**
**Fair Housing Act Disability Discrimination**
**(Brought by Regina Wallace, HOPE and RAMP Against All Defendants)**

123.   Plaintiffs reallege and incorporate by reference the allegations contained in
paragraphs 1-122 as if fully set forth herein.

124.   In violation of 42 U.S.C. § 3604(d), Defendants represented to Ms. Wallace that
more accessible units than her third-floor walk-up unit were not available for rental when such
units were in fact so available throughout her year of residence in Phase II.

125.   Defendants have denied or made unavailable housing because of a handicap[2] in
violation of 42 U.S.C. § 3604(f)(1).

126.   Defendants have discriminated in the terms, conditions, privileges, or services and
facilities provided by Defendants in violation of 42 U.S.C. § 3604(f)(2).

127.   Defendants have failed to make reasonable accommodations in violation of
42U.S.C. §3604(f)(3).

128.   Defendants' conduct on a continuing and ongoing basis in violation of the Fair
Housing Act includes but is not limited to the following:

a. Misrepresenting that Ms. Wallace would be provided with a first floor unit to

---

[2] At the time the Fair Housing Act was amended in 1988, the phrase more commonly used was "handicap", because disability is synonymous with handicap and the preferred term, that phrase is used in this document.

accommodate her disability, resulting in Ms. Wallace relinquishing her prior residence and being without housing except an inaccessible unit;

b. Failing to properly allow Ms. Wallace a live-in aide;

c. Improperly requiring Ms. Washington as a live-in aide to be included on Ms. Wallace's lease, and then denying her request to be included;

d. Refusing Ms. Wallace's appropriate choice of live-in aide based on the familial status of the live-in aide;

e. Failing to accommodate Ms. Wallace's disability assistance payment schedule and improperly assessing monthly late fees to Ms. Wallace;

f. Failing to provide an accessible manner of payment of rent or accessible office/management facilities;

g. Failing to make the premises and common areas accessible in general;

h. Failing to reasonably or timely relocate Ms. Wallace;

i. Directing Ms. Wallace to live out of packed boxes "to a bare minimum" in her unit for months, under false representations that Defendants would relocate Ms. Wallace;

j. Notifying Ms. Wallace that her tenancy would be terminated due to the residence of her proper live-in aide;

k. Repeatedly providing Ms. Wallace with unwarranted Notices of termination of tenancy;

l. Engaging in harassment and claiming to place Plaintiffs under surveillance; and

m. Providing false negative information to a prospective replacement housing

assistance provider.

## COUNT II
### Fair Housing Act Familial Status Discrimination
### (Brought by Jerline Washington, HOPE and RAMP Against All Defendants)

129.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-122 as if fully set forth herein.

130.    Ms. Washington qualified as a live-in aide as defined in 24 CFR § 5.403 in that she resided with Ms. Wallace, an individual with disabilities and she:

      a.   Was essential to the care and well-being of Ms. Wallace;

      b.   Was not obligated for the support of Ms. Wallace; and

      c.   Would not have been living in the unit except to provide the necessary supportive services.

131.    In violation of 42 U.S.C. § 3604(a), Defendants refused to make available a dwelling to Ms. Washington because of her familial status, in that she had a minor son.

132.    In violation of 42 U.S.C. § 3604(b), Defendants discriminated in the terms conditions, and privileges of rental of a dwelling and in the provision of services or facilities in connection therewith because of Ms. Washington's familial status, in that she had a minor son.

## COUNT III
### Fair Housing Act Retaliation
### (Brought by All Plaintiffs Against All Defendants)

133.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-122 as if fully set forth herein.

134.    In violation of 42 U.S.C. § 3617, Defendants coerced, intimidated, threatened, and interfered with Ms. Wallace and Ms. Washington's enjoyment of rights granted and protected by 42 U.S.C. §§ 3603 and 3604 on account of their exercise and enjoyment of rights granted and

23

protected by 42 U.S.C. §§ 3603 and 3604.

135.    Plaintiffs' protected activity includes, but is not limited to, requests by Ms. Wallace, Ms. Washington, and RAMP for reasonable accommodations, and complaints by Ms. Wallace, Ms. Washington and RAMP to Defendants and HUD in response to Defendants' failure to accommodate the requested reasonable accommodations.

136.    Defendants' retaliatory conduct was taken against Ms. Wallace and Ms. Washington for attempting on their own and through RAMP and HOPE to enforce their rights under 42 U.S.C. §§ 3603 and 3604 and includes but is not limited to:

    a.   Posting notices for and assessing late fees;

    b.   Failing and refusing to relocate Ms. Wallace to a first floor accessible unit or in any event to a unit that accommodated a live-in aide;

    c.   Directing Ms. Wallace to live out of packed boxes;

    d.   Continuously refusing to reasonably accommodate Ms. Wallace following her requests and complaints;

    e.   Refusing Ms. Wallace's designated live-in aide for baseless reasons;

    f.   Requiring Ms. Wallace to undergo unwarranted processes concerning inclusion of a live-in aide in her unit as she required;

    g.   Threatening and attempting to evict Ms. Wallace and Ms. Washington;

    h.   Claiming Ms. Wallace and Ms. Washington were being placed by Defendants under undue scrutiny and surveillance; and

    i.   Providing a false and negative report to the Housing Authority of DeKalb County, which resulted in the Housing Authority's initial denial of Ms. Wallace's application for housing assistance and thus materially further

delayed her relocation to an accessible residence.

## COUNT IV
### Title III of the Americans with Disabilities Act – Public Accommodation
### (Brought by Regina Wallace Against Defendants UVMC,
### University Village, DCC, JDC, JDM, Chudacoff, Crane, and Mickelson)

137.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1-122 as if fully set forth herein.

138.     The rental office on Crane Drive owned by Defendants University Village, DCC,

JDC, JDM, Chudacoff, Crane, and Mickelson and operated by Defendant UVMC is a place of

public accommodation, as defined in 42 U.S.C. § 12181.

139.     Defendants UVMC, Defendants University Village, DCC, JDC, JDM, Chudacoff,

Crane, and Mickelson, as owners and operators of the rental office on Crane Drive, discriminated

against Ms. Wallace on the basis of disability in the full and equal enjoyment of the services,

facilities, privileges, advantages and accommodations of the rental office on Crane Drive, in

violation of 42 U.S.C. § 12182.  Defendants' discriminatory actions include, but are not limited

to:

a.   Failing to make reasonable modifications in policies, practices, and

procedures, when the modifications are necessary to afford services,

facilities, privileges, advantages, and accommodations to individuals with

disabilities; and

b.   Failing to remove architectural barriers in existing facilities.

## COUNT V
### Americans with Disabilities Act Retaliation
### (Brought by Regina Wallace and Jerline Washington Against All Defendants)

140.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1-122 as if fully set forth herein.

141.     In violation of 42 U.S.C. § 12203(a), Defendants discriminated against Ms. Wallace and Ms. Washington because they opposed acts and practices made unlawful by 42 U.S.C. § 12182.

142.     In violation of 42 U.S.C. § 12203(b), Defendants coerced, intimidated, threatened, and interfered with Ms. Wallace and Ms. Washington enjoyment rights granted and protected by 42 U.S.C. § 12182 on account of their exercise and enjoyment of rights granted and protected by 42 U.S.C. § 12182.

143.     Plaintiffs' protected activity includes, but is not limited to, requests by Ms. Wallace, Ms. Washington, and RAMP for reasonable accommodations, and complaints by Ms. Wallace, Ms. Washington and RAMP to Defendants and HUD in response to Defendants' failure to accommodate the requested reasonable accommodations.

144.     Defendants retaliated against Ms. Wallace and Ms. Washington on their own and through RAMP and HOPE for attempting to enforce their rights under 42 U.S.C. § 12182 including, but not limited to, in the following ways:

     a.   Posting notices for and assessing late fees;

     b.   Failing and refusing to relocate Ms. Wallace to a first floor accessible unit or in any event to a unit that accommodated a live-in aide;

     c.   Directing Ms. Wallace to live out of packed boxes;

     d.   Continuously refusing to reasonably accommodate Ms. Wallace following her requests and complaints;

     e.   Refusing Ms. Wallace's designated live-in aide for baseless reasons;

     f.   Requiring Ms. Wallace to undergo unwarranted processes concerning inclusion of a live-in aide in her unit as she required;

g.  Threatening and attempting to evict Ms. Wallace and Ms. Washington;

h.  Claiming Ms. Wallace and Ms. Washington were being placed by
    Defendants under undue scrutiny and surveillance; and

i.  Providing a false and negative report to the Housing Authority of DeKalb
    County, which resulted in the Housing Authority initially denying Ms.
    Wallace's application for housing assistance and thus materially further
    delaying her relocation to an accessible residence.

<u>**COUNT VI**</u>
**Section 504 of the Rehabilitation Act Disability Discrimination**
**(Brought by Regina Wallace Against Defendants UVMC,**
**University Village, DCC, JDC, JDM, Chudacoff, Crane, and Mickelson)**

145.  Plaintiffs reallege and incorporate by reference the allegations contained in
paragraphs 1-122 as if fully set forth herein.

146.  Defendants, who are all recipients of federal financial assistance, excluded Ms.
Wallace from, and denied her the benefits of, a program or activity receiving federal financial
assistance because of her disability in violation of 29 U.S.C. § 794.

147.  Defendants failed to make reasonable accommodations that Ms. Wallace
requested in violation of 29 U.S.C. § 794.

148.  Defendants' conduct on a continuing and ongoing basis in violation of Section
504 of the Rehabilitation Act includes but is not limited to the following:

a.  Misrepresenting that Ms. Wallace would be provided with a first floor unit to
    accommodate her disability, resulting in Ms. Wallace relinquishing her prior
    residence and being without housing except an inaccessible unit;

b.  Failing to properly allow Ms. Wallace a live-in aide;

c.  Improperly requiring Ms. Washington as a live-in aide to be included on Ms.

Wallace's lease, and then denying her request to be included;

d. Refusing Ms. Wallace's appropriate choice of live-in aide based on the familial status of the live-in aide;

e. Failing to accommodate Ms. Wallace's disability assistance payment schedule and improperly assessing monthly late fees to Ms. Wallace;

f. Failing to provide an accessible manner of payment of rent or accessible office/management facilities;

g. Failing to make the premises and common areas accessible in general;

h. Failing to reasonably or timely relocate Ms. Wallace;

i. Directing Ms. Wallace to live out of packed boxes "to a bare minimum" in her unit for months, under false representations that Defendants would relocate Ms. Wallace;

j. Notifying Ms. Wallace that her tenancy would be terminated due to the residence of her proper live-in aide;

k. Repeatedly providing Ms. Wallace with unwarranted Notices of termination of tenancy;

l. Engaging in harassment and claiming to place Plaintiffs under surveillance; and

m. Providing false negative information to a prospective replacement housing assistance provider.

## COUNT VII
### Section 504 of the Rehabilitation Act Retaliation
**(Brought by Regina Wallace and Jerline Washington Against Defendants UVMC, University Village, DCC, JDC, JDM, Chudacoff, Crane, and Mickelson)**

149. Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1-118 as if fully set forth herein.

150. In violation of 29 U.S.C. § 794, Defendants discriminated against Ms. Wallace and Ms. Washington because they opposed acts and practices made unlawful by 29 U.S.C. § 794.

151. Plaintiffs' protected activity includes, but is not limited to, requests by Ms. Wallace, Ms. Washington, and RAMP for reasonable accommodations, and complaints by Ms. Wallace, Ms. Washington and RAMP to Defendants and HUD in response to Defendants' failure to accommodate the requested reasonable accommodations.

152. Defendants' retaliatory conduct was taken against Ms. Wallace and Ms. Washington for attempting on their own and through RAMP and HOPE to oppose acts and practices made unlawful by 29 U.S.C. § 794 and includes but is not limited to:

    a. Posting notices for and assessing late fees;

    b. Failing and refusing to relocate Ms. Wallace to a first floor accessible unit or in any event to a unit that accommodated a live-in aide;

    c. Directing Ms. Wallace to live out of packed boxes;

    d. Continuously refusing to reasonably accommodate Ms. Wallace following her requests and complaints;

    e. Refusing Ms. Wallace's designated live-in aide for baseless reasons;

    f. Requiring Ms. Wallace to undergo unwarranted processes concerning inclusion of a live-in aide in her unit as she required;

    g. Threatening and attempting to evict Ms. Wallace and Ms. Washington;

    h. Claiming Ms. Wallace and Ms. Washington were being placed by Defendants under undue scrutiny and surveillance; and

    i. Providing a false and negative report to the Housing Authority of DeKalb

County, which resulted in the Housing Authority initially denying Ms.

Wallace's application for housing assistance and thus materially further

delaying her relocation to an accessible residence.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for Counts I, II, III, VI, and VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

A.      Enter a declaratory judgment the unlawful discriminatory and retaliatory conduct

of all Defendants has injured Plaintiffs in violation of the Fair Housing Act of 1968, as amended,

42 U.S.C. 3601 *et seq.*;

B.      Enter a declaratory judgment that the unlawful discriminatory conduct of

Defendants UVMC, University Village, DCC, JDC, JDM, Chudacoff, Crane, and Mickelson has

injured Plaintiffs in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*;

C.      Enter a declaratory judgment that the unlawful retaliatory conduct of all

Defendants has injured Plaintiffs in violation of the Americans with Disabilities Act, 42 U.S.C.

§12101 *et seq.*;

D.      Enter a declaratory judgment that the unlawful discriminatory and retaliatory

conduct of Defendants UVMC, University Village, DCC, JDC, JDM, Chudacoff, Crane, and

Mickelson has injured Plaintiffs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794;

E.      Grant a permanent injunction ordering Defendants, their officers, successors,

assigns, and all persons in active concert or participating with them, to cease and desist from any

of the conduct found by this Court to be discriminatory or retaliatory;

F.      Grant a permanent injunction directing that Defendants take all affirmative steps

necessary to remedy the effects of the illegally discriminatory and retaliatory conduct alleged in

this Complaint and to prevent repeated occurrences in the future;

G.      Award such damages under the Fair Housing Act of 1968, as amended, 42 U.S.C.

3601 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as will fully

compensate Plaintiffs for their injuries incurred as a result of Defendants' discriminatory housing

practices and conduct alleged herein;

H.      Award such punitive damages against Defendants as are proper under law to

punish them for their malicious and recklessly indifferent conduct alleged herein and to

effectively deter similar conduct in the future, pursuant to 42 U.S.C. § 3613(c)(1);

I.      Award Plaintiffs their costs and attorneys' fees incurred herein, pursuant to 42

U.S.C. § 3613(c)(2), 42 USC § 12205, and 29 U.S.C. § 794a(b);

J.      Award Plaintiffs all other applicable relief available to them under the Fair

Housing Act of 1968, as amended, 42 U.S.C. 3601 *et seq.*, the Americans with Disabilities Act,

42 U.S.C. §12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and

K.      Grant such other relief as the Court deems appropriate.


                                        Respectfully submitted,

                                        /s/ Jennifer K. Soule
                                        One of Plaintiffs' Attorneys

Dated:  August 1, 2013
Jennifer K. Soule
Kelly K. Lambert
James B. Griffin
**Soule, Bradtke & Lambert**
533 Division Street, Suite B
Elmhurst, IL  60126
(630) 333-9144